**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RSUI INDEMNITY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:26-cv-03263 |
| ) | |
| PEOPLESHARE, LLC, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, RSUI Indemnity Company, by and through its counsel, and for its Complaint for Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 against defendant PeopleShare LLC.

**NATURE OF ACTION**

1. RSUI Indemnity Company ("RSUI") brings this Complaint under 28 U.S.C. §§ 2201 and 2202 seeking a declaration respecting RSUI's coverage obligations owed to defendant PeopleShare LLC ("PeopleShare") in connection with two underlying lawsuits: *Chicago Workers' Collaborative NFP. v. Ferrara Candy Company, et al.*, Case No. 2024 CH 10262 (Cook County, Illinois), and *Paulina Cruz, et al. v. Ferrara Candy Company, et al.*, Case No. 2025 CH 04294 (Cook County, Illinois) (collectively the "Underlying Lawsuits").

2. RSUI also seeks a declaration respecting RSUI's coverage obligations owed to PeopleShare in connection with a demand for indemnification made by non-party Ferrara Candy Company to PeopleShare, seeking contractual indemnification in connection with the Underlying Lawsuits (the "Indemnification Demand").

3. RSUI seeks a determination that it has no duty to defend or indemnify PeopleShare as respects the Underlying Lawsuits or the Indemnification Demand.

4.      As a result of the dispute between RSUI and PeopleShare regarding the existence of insurance coverage for the Underlying Lawsuit and the Indemnification Demand, there is an actual case or controversy between the parties.

## PARTIES

5.      Plaintiff RSUI is an insurance company that is organized and exists pursuant to the laws of New Hampshire, with its principal place of business in the state of Georgia.

6.      Defendant PeopleShare LLC is a Delaware limited liability company with its principal place of business in Collegeville, Pennsylvania. PeopleShare's sole member is Proman Group, Inc., a Delaware corporation with its principal place of business in Northbrook, Illinois.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1), because there is complete diversity between Plaintiff and Defendant, and the amount in controversy, exclusive of interest, exceeds $75,000.

8.      This Court has personal jurisdiction over Defendant because it conducts business in Illinois, including the actions giving rise to the Underlying Lawsuits, the Indemnification Demand, and the present insurance dispute.

9.      Venue is proper pursuant to 28 U.S.C. §§ 139l(b)(2) because the insurance policy in dispute was issued in this district and a substantial part of the events or omissions giving rise to the Underlying Lawsuits and the Indemnification Demand occurred in this district, which give rise to RSUI's claim for no insurance coverage in this action.

## FACTUAL BACKGROUND

### *The RSUI Policy*

10.      RSUI issued a Private Company Management Liability Policy, policy no.

NEP710495, to PeopleShare's parent company, Proman Group Inc., for the policy period of June 18, 2024 to June 18, 2025, with an aggregate limit of liability of $2,000,000 (the "2024 Policy"). A true and correct copy of the 2024 Policy, with redactions for premium information, is attached hereto as Exhibit A.

11.     RSUI renewed the Policy under substantially the same terms for the policy period of June 18, 2025 to June 18, 2026 (the "2025 Policy"). The 2024 Policy and the 2025 Policy are collectively referred to herein as the "Policies." A true and correct copy of the 2025 Policy, with redactions for premium information, is attached hereto as Exhibit B.

12.     The Policies contain an endorsement entitled "Subsidiary Added With A Pending And/Or Prior Litigation Date," which recognizes PeopleShare as a "Subsidiary" of Proman Group entitled to coverage under the Policies in accordance with their terms.

13.     The Policies contain a form entitled "Employment Practices Liability Coverage Section (Private)", form number RSG 241008 0118, which provides in relevant part as follows:

**SECTION I. - INSURING AGREEMENTS**

**A. Employment Practices Liability**

The **Insurer** shall pay **Loss** up to the Limit of Liability applicable to this **Coverage Section** on behalf of the **Insured** in connection with any **Employment Practices Claim** first made against any **Insured** during the **Policy Period** and reported in accordance with SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy.

***

**SECTION III. – DEFINITIONS**

**A. Claim**, for purposes of this Coverage Section shall be an **Employment Practices Claim**, which means:

A written demand for monetary or non-monetary relief solely where alleging an **Employment Practices Wrongful Act**, including:

**1.** A civil, criminal, administrative, regulatory or arbitration proceeding or arbitration demand for monetary or non-monetary relief which is commenced by:

    **a.** Receipt or service of a complaint or similar pleading;
    **b.** Return of an indictment or filing of information; or
    **c.** Receipt of a notice of charges;

\*\*\*

## SECTION IV. – EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

\*\*\*

**4.** For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

14. The Policies contain a form entitled "Common Policy Terms and Conditions Coverage Section (Private)", form no. RSG 241001 0622, which states in relevant part as follows:

## SECTION V. – CONDITIONS

\*\*\*

**B. Limit of Liability; Retention; Payment of Loss**

\*\*\*

4. All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 3. of the Declarations Page for each applicable **Coverage Section**, or other applicable Retention, and shall be

deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

15. The Policies contain an endorsement entitled "Amended Notice of Claim or Circumstance – Specific Position Trigger", form no. RSG 204151 0118, which states in relevant part:

> SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance of the Common Policy Terms and Conditions Coverage Section is deleted and replaced by the following:
>
> **C. Notice of Claim or Circumstance**
>
> **1.** If, during the **Policy Period** or Extended Reporting Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after the **Insured's** <u>Chief Executive Officer, Chief Financial Officer, General Counsel or Risk Manager</u> first becomes aware of the Claim, but in no event shall such notice be given later than sixty (60) days after the expiration or earlier cancellation date of this Policy.
>
> ***
>
> Further, if any **Claim** first made after the **Policy Period** expires is nonetheless deemed to be made during the **Policy Period** pursuant to Section V.B.4., then it is a condition precedent to coverage for such **Claim** that the **Insured** report it to the **Insurer** as soon as practicable.

All other terms and conditions of this policy remain unchanged.

### *The Underlying Lawsuits*

16. On November 19, 2024, the Chicago Workers' Collaborative, NFP. ("CWC") filed a lawsuit in Cook County, Illinois, case no. 2024 CH 10262, against Ferrara Candy Company ("Ferrara"), Multi-Temps Staffing, Inc. ("Multi-Temps"), and PeopleShare (the "*CWC Lawsuit*"). A true and correct copy of the complaint filed in the *CWC Lawsuit* is attached hereto as Exhibit C.

17. The *CWC Lawsuit* identifies CWC as a non-profit watchdog organization that monitors compliance with public and worker safety laws, wage and hour requirements, and statutory requirements.

18. The *CWC Lawsuit* alleges violations of the Illinois Day and Temporary Labor Service Act ("IDTLSA") since August 4, 2023 against Ferrara in connection with job hazards faced by temporary laborers working at Ferrara's facility. The *CWC Lawsuit* alleges similar violations by Multi-Temps and PeopleShare in their roles as staffing companies providing temporary workers to Ferrara.

19. Generally, the *CWC Lawsuit* alleges that, since at least August 4, 2023, the underlying defendants failed to provide temporary laborers assigned to Ferrara with employment, training, safety, health, and hazard notices required by the IDTLSA.

20. On April 16, 2025, eleven individuals, including Paulina Cruz, filed another lawsuit in Cook County, Illinois, case no. 2025 CH 04294, against Ferrara, Multi-Temps, PeopleShare, and Remedial Environmental Manpower, Inc. ("Remedial") (the "*Cruz Lawsuit*"). A true and correct copy of the complaint filed in the *Cruz Lawsuit* is attached hereto as Exhibit D.

21. The *Cruz Lawsuit* is a purported class action lawsuit alleging violations since August 4, 2023 by Ferrara, Multi-Temps, PeopleShare, and Remedial of the IDTLSA and the Illinois Minimum Wage Law.

22. The factual allegations in the *CWC Lawsuit* and the *Cruz Lawsuit* are substantially the same.

23. On August 21, 2025, Ferrara sent a letter to counsel for PeopleShare demanding that PeopleShare indemnify and defend Ferrara in the Underlying Lawsuits pursuant to

PeopleShare's Temporary Employee Staffing Agreement entered into with Ferrara dated March 5, 2021 (the "Indemnification Demand").

### *Coverage Communications*

24. PeopleShare tendered both Underlying Lawsuits to RSUI for coverage on October 23, 2025.

25. PeopleShare's tender to RSUI on October 23, 2025 did not include a copy of the August 21, 2025 Indemnification Demand that PeopleShare received from Ferrara.

26. In response to an inquiry from RSUI, PeopleShare confirmed that it was served with the *CWC Lawsuit* on February 2, 2025 and served with the *Cruz Lawsuit* on April 22, 2025, during the 2024 Policy's policy period.

27. RSUI denied coverage for the *Cruz Lawsuit* by letter dated October 27, 2025, including a request that PeopleShare consider formally withdrawing its claim for coverage.

28. RSUI denied coverage for the *CWC Lawsuit* by letter dated October 31, 2025, including a request that PeopleShare consider formally withdrawing its claim for coverage.

29. Both letters noted that the 2024 Policy requires "Claims" first made during the June 18, 2024 to June 18, 2025 policy period to be reported no later than 60 days after the expiration of the policy period, or August 17, 2025. Because PeopleShare reported the Underlying Lawsuits to RSUI more than 60 days after expiration of the 2024 Policy, coverage was not available for the Underlying Lawsuits.

30. PeopleShare made no response to the denials of coverage for the Underlying Lawsuits.

31. On January 20, 2026, PeopleShare tendered the Indemnification Demand to RSUI for coverage.

32.     By letter dated January 29, 2026, RSUI denied coverage for the Indemnification Demand for similar reasons as RSUI's prior denial of coverage for the Underlying Lawsuits.

33.     On February 23, 2026, outside counsel representing Proman Group/PeopleShare sent a letter to RSUI's outside counsel challenging the January 29, 2026 denial of coverage for the Indemnification Demand and asserting the Indemnification Demand was timely reported under the 2025 Policy.

34.     On March 6, 2026, RSUI declined to reconsider its coverage denial for the Indemnification Demand by letter from its outside counsel to PeopleShare's counsel.

35.     PeopleShare's counsel sent a responsive letter that same day continuing to dispute RSUI's coverage determination.

36.     To date, PeopleShare has not disputed RSUI's denial of coverage for the Underlying Lawsuits by letters dated October 27, 2025 and October 31, 2025.

**COUNT I – DECLARATORY JUDGMENT**
*Notice Requirements Not Satisfied*

37.     The allegations of paragraphs 1 through 36 of this Complaint are incorporated by reference and realleged as if fully set forth herein.

38.     An actual case or controversy exists between RSUI and PeopleShare concerning coverage under the Policies.

39.     PeopleShare was served with the Underlying Lawsuits during the 2024 Policy's policy period.

40.     Therefore, the Underlying Lawsuits constitute a "Claim" first made during the pendency of the 2024 Policy that must be reported to RSUI in accordance with the terms of the 2024 Policy.

41. PeopleShare reported the Underlying Lawsuits to RSUI more than 60 days after expiration of the 2024 Policy.

42. PeopleShare's late reporting of the Underlying Lawsuits does not comply with the 2024 Policy's reporting requirements, therefore coverage is not available for the Underlying Lawsuits.

43. Both Policies' Common Policy Terms and Conditions form contains Section V.B.4., which provides that "All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events… shall be deemed to be a single **Claim** for all purposes under this policy… and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**."

44. The Indemnification Demand arises directly out of the facts and circumstances alleged in the Underlying Lawsuits.

45. Pursuant to Section V.B.4. of the Policies, the Indemnification Demand and the Underlying Lawsuits constitute a single "Claim" first made during the 2024 Policy.

46. Accordingly, because the "Claim" was first made during the pendency of the 2024 Policy but not reported in conformance with the 2024 Policy's reporting requirements, no coverage is available for the entire "Claim," including the Underlying Lawsuits and the Indemnification Demand.

47. Therefore, RSUI is entitled to a declaration that it has no duty to defend or indemnify PeopleShare in the Underlying Lawsuits or in connection with the Indemnification Demand.

## COUNT II – DECLARATORY JUDGMENT
### *FLSA Exclusion*

48.     The allegations of paragraphs 1 through 36 of this Complaint are incorporated by reference and realleged as if fully set forth herein.

49.     An actual case or controversy exists between RSUI and PeopleShare concerning coverage under the Policies.

50.     The Policies' Employment Practices Liability Coverage Section contains an exclusion in Section IV.4. that precludes coverage for any "Claim" made against any "Insured" for violation of any of the responsibilities obligations, or duties imposed by a number of federal acts, including the Fair Labor Standards Act ("FLSA"), and "similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions" (the "FLSA Exclusion").

51.     The Underling Lawsuits both allege violations of federal, state, or local laws that are excluded by the FLSA Exclusion.

52.     The Indemnification Demand seeks indemnification in connection with Underlying Lawsuits that allege violations of federal, state, or local laws that are excluded by the FLSA Exclusion

53.     Therefore, RSUI is entitled to a declaration that it has no duty to defend or indemnify PeopleShare in connection with all or at least a portion of the Underlying Lawsuits or the Indemnification Demand.

## DEMAND FOR JUDGMENT

WHEREFORE, plaintiff, RSUI Indemnity Company ("RSUI"), prays that this honorable

Court declare and adjudicate the rights and liabilities of the parties regarding the 2024 Policy and

the 2025 Policy with the following relief:

a. Declaring the rights and obligations of RSUI under the Policies as respects the lawsuit styled *Chicago Workers' Collaborative NFP. v. Ferrara Candy Company, et al.*, Case No. 2024 CH 10262 (Cook County, Illinois), and *Paulina Cruz, et al. v. Ferrara Candy Company, et al.*, Case No. 2025 CH 04294 (Cook County, Illinois) (the "Underlying Lawsuits");

b. Declaring the rights and obligations of RSUI under the Policies as respects the August 21, 2025 indemnification demand from Ferrara Candy Company to PeopleShare, LLC (the "Indemnification Demand");

c. Declaring that RSUI does not owe a duty to defend or indemnify PeopleShare LLC in connection with the Underlying Lawsuits.

d. Declaring that RSUI does not owe a duty to defend or indemnify PeopleShare LLC in connection with the Indemnification Demand.

e. Any further relief that this Court deems just and appropriate.


Dated: March 24, 2026                    Respectfully Submitted,


                                        /s/ Kevin A. Lahm
                                        Kevin A. Lahm
                                        Danielle Towe
                                        WALKER WILCOX MATOUSEK LLP
                                        1 North Franklin Street, Suite 3200
                                        Chicago, Illinois 60606
                                        (312) 244-6700
                                        (312) 244-6800 (Facsimile)
                                        klahm@walkerwilcox.com
                                        dtowe@walkerwilcox.com

                                        *Attorneys for Plaintiff*
                                        *RSUI Indemnity Company*